

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-28-2009

# USA v. Del Valle

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-3695

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"USA v. Del Valle" (2009). *2009 Decisions*. Paper 1470.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1470

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 07-3695

———

UNITED STATES OF AMERICA

v.

JOSE DEL VALLE,
                                        Appellant

———

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Crim. No.06-cr-00667-1)
District Judge: Hon. Harvey Bartle, III

———

Submitted Under Third Circuit LAR 34.1(a)
April 24, 2009

Before: SCIRICA, Chief Judge, SLOVITER and FISHER, Circuit Judges

(Filed: April 28, 2009)

———

OPINION

SLOVITER, Circuit Judge.

Jose Del Valle appeals the District Court's denial of his motion to suppress. We will affirm.

## I.

In early October 2006, DEA agents began conducting surveillance of a house in Palisades Park, New Jersey, based on information received from an unspecified source. On October 18, 2006, agents followed a red pickup truck with Illinois plates from the Palisades Park house to the parking lot of a Lowe's home improvement store in Philadelphia. The drive took approximately one hour and twenty-five minutes although there were other Lowe's stores located along the way.

After the driver parked and entered Lowe's, a black sport utility vehicle ("SUV"), driven by a man later identified as Del Valle, pulled up next to the red pickup. Del Valle exited his vehicle and entered the red pickup as its driver, while the passenger of the black SUV took over as its driver. The agents followed Del Valle in the red pickup to a gated lot in North Philadelphia, where the SUV (now unoccupied) was already parked. Del Valle, who entered the lot in the red pickup, disappeared from view, and departed fifteen minutes later. The driver of the black SUV locked the gate and followed the red pickup back to the Lowe's parking lot, and Del Valle parked the red pickup where he had originally found it. He then entered the black SUV, which drove away. The original driver of the red pickup soon exited Lowe's, carrying no shopping bags. Approximately

2

an hour had elapsed since he entered the store. The agents then followed the red pickup back to Palisades Park.

Terrance McCabe, a DEA agent with fifteen years in law enforcement (five of which were with the DEA Task Force), was one of the agents who followed the red pickup that day. Based on his observations and experience, McCabe believed that he had witnessed "a vehicle drop for a narcotics transaction," app. at 61, in which the men "were dropping th[e] vehicle, either with narcotics in it or with money in it or vice versa," app. at 57.

Within the next few days, the agents identified Del Valle from a DMV photograph and learned from other federal agents that he had been arrested for drugs, was the subject of an ongoing investigation, and "was known to be a dangerous individual [who] sometimes carried a weapon." App. at 178.

On October 29, 2006, DEA agents followed what appeared to be the same red pickup (now with New York license plates and driven by a different man), to the same shopping center in Philadelphia.[1] The driver entered a Walmart store, and soon thereafter Del Valle and his co-defendant, Herminio Galindez, arrived in what appeared to be the same black SUV that Del Valle had driven on October 18, 2006. Del Valle entered the

---

[1] After the red pickup was seized, agents determined that it was the same vehicle they followed to Philadelphia on October 18, 2006, by matching the vehicle identification numbers from the Illinois and New York registration documentation.

3

driver's side of the red pickup, and Galindez, who was carrying a black duffle bag, entered the passenger's side.

Agent McCabe and Agent Jose Correa were among the agents following Del Valle and Galindez on this occasion. Agent Correa had approximately ten years experience as a DEA agent, as well as experience in the narcotics division of the Passaic County Sheriff's Office. The agents followed Del Valle as he drove through a residential neighborhood for approximately twenty minutes in a manner that led Agents McCabe and Correa to believe that Del Valle was employing the counter-surveillance technique of "squaring the blocks," app. at 74, 148, which is used to determine if a vehicle is being followed. At one point, Del Valle pulled over and Galindez climbed into the vehicle's extended cabin with the black duffle bag. This activity led the agents to suspect that the pickup had a secret compartment. After Del Valle began driving again, he continued to square the blocks before making an abrupt turn that caused the agents to suspect that he now realized he was being followed.

The agents then stopped the red pickup, blocking it in on either end with their cars, and ordered the men to exit the vehicle. When Galindez was removed from the extended cabin, Agent McCabe saw an open black duffle bag containing what he identified as kilograms of cocaine, as well as an open "hidden compartment." App. at 78. When Del Valle exited the vehicle, he asked Agent Correa, without prompting, "just tell me who gave me up?" App. at 367. The agents recovered a total of approximately twenty-four

4

kilograms of cocaine and $22,000 in cash. After Del Valle and Galindez were arrested, Galindez waived his *Miranda* rights and said in Spanish, "You got me with 24 kilos, what else is there to say?" App. at 379.

Del Valle was charged with conspiracy to possess, with the intent to distribute, five kilograms or more of cocaine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846; possession, with the intent to distribute, five kilograms or more of cocaine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A); and aiding and abetting the possession of five kilograms or more of cocaine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 18 U.S.C. § 2.

The District Court denied Del Valle's motion to suppress the physical evidence and the statements resulting from the stop of the red pickup. A jury convicted him of all charges. Because Del Valle had two prior convictions for felony drug offenses, he was sentenced to life imprisonment, as statutorily mandated by 21 U.S.C. § 841(b)(1)(A). Del Valle appeals the District Court's denial of his motion to suppress.

## II.

Without challenging any of the District Court's factual findings, Del Valle argues that his motion to suppress should have been granted because the vehicle stop did not comport with the Fourth Amendment.[2] Under *Terry v. Ohio,* "an officer may, consistent

---

[2] The District Court had jurisdiction under 18 U.S.C. § 3231 and we have jurisdiction under 28 U.S.C. § 1291. We review the District Court's denial of a motion to suppress for clear error as

5

with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). "[R]easonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also . . . can arise from information that is less reliable than that required to show probable cause." *Alabama v. White*, 496 U.S. 325, 330 (1990). "[C]ourts are not to evaluate factors in isolation, but are instead to evaluate the totality of the circumstances." *United States v. Nelson*, 284 F.3d 472, 475 (3d Cir. 2002).

However, "to rise to a reasonable suspicion, these factors combined must 'eliminate a substantial portion of innocent travelers' or describe 'behavior in which few innocent people would engage.'" *United States v. Mathurin*, — F.3d —, No. 07-4576, 2009 WL 792462, at *8 (3d Cir. 2009) (quoting *Karnes v. Skrutski*, 62 F.3d 485, 493 (3d Cir. 1995)); *see also Nelson*, 284 F.3d at 480 ("[A]cts that in isolation may be 'innocent in itself' or at least susceptible to an innocent interpretation, may collectively amount to reasonable suspicion." (quoting *United States v. Arvizu*, 534 U.S. 226, 274 (2002)). "[C]ourts are . . . to afford to officers the opportunity to 'draw on their own experience and specialized training to make inferences from and deductions about the cumulative

to the underlying factual findings and exercise plenary review over the Court's application of law to those facts. *United States v. Perez*, 280 F.3d 318, 336 (3d Cir. 2002).

6

information available to them that "might well elude an untrained person."'" *Nelson*, 284 F.3d at 475 (quoting *Arvizu*, 534 U.S. at 273).

Here, the facts were sufficient to establish reasonable suspicion because "when viewed collectively and in light of the agents' experience and training, they amounted to a particularized and objective basis for suspecting [Del Valle and his co-defendant Galindez] of criminal activity when the agents stopped the [pickup]." *Mathurin*, 2009 WL 792462, at *8.

## III.

For the above-stated reasons, we will affirm the judgment and sentence of the District Court.