**UNITED STATES of America,**
**Appellant**

v.

**Dominic WILLIAM; Eustace Harry; Vibert George, a/k/a Eddy; Conelian Joseph; Aldrick Paul; Vilbert George, a/k/a T–Bird.**

No. 08–4518.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit L.A.R. 34.1(a), Dec. 4, 2009.

Opinion Filed: Jan. 7, 2010.

Brian C. Toth, Esq., United States Department of Justice, Washington, DC, Rhonda Williams–Henry, Esq., Office of United States Attorney, Christiansted, VI, for Appellant.

Patricia Schrader–Cooke, Esq., Office of Federal Public Defender, Jeffrey B.C. Moorhead, Esq., Christiansted, VI, Emile A. Henderson, III, Esq., Law Office of Yvette Ross Edwards, Jomo Meade, Esq., Eszart A. Wynter, Sr., Esq., Frederiksted, VI, Yohana M. Manning, Esq., St. Croix, VI, for Dominic William; Eustace Harry; Vibert George, a/k/a Eddy; Conelian Joseph; Aldrick Paul; Vilbert George, a/k/a T–Bird.

Before: MCKEE, FUENTES, and NYGAARD, Circuit Judges.

## OPINION OF THE COURT

FUENTES, Circuit Judge:

The United States appeals from the District Court's order granting the defendants' motion to suppress evidence seized during a traffic stop. For the reasons that follow, we will affirm the District Court's order.

### I.

Because we write primarily for the parties, we only discuss the facts and proceedings to the extent necessary for resolution of the issues raised on appeal. On May 22, 2008 at around 9:15 p.m., the Virgin Islands Police Department received an anonymous telephone call from a woman who reported seeing a small boat dropping off what appeared to be illegal immigrants at Robin Bay, St. Croix. The anonymous caller provided no description of the suspects. The dispatcher advised all patrol units of the tip.

Shortly thereafter, Police Officer Heraldo Charles was driving along the shore

toward Robin Bay when he observed a red pickup truck traveling in the opposite direction with four passengers in the truck bed. The passengers were shirtless and some had towels draped over their shoulders. Based upon the tip, the fact that the men in the truck were shirtless and had towels on them, and his (apparently erroneous) belief that a recent incident relating to the transportation of illegal immigrants had involved a red pickup truck, Officer Charles pulled the truck over and radioed for assistance.

Officer Charles approached the pickup truck, asked the driver to get out of the vehicle, and questioned him. As Officer Charles was questioning the driver, Lieutenant Benjamin Rios arrived at the scene. As Lieutenant Rios approached Officer Charles and the driver, Charles told Rios that "it was okay" because "the individuals were just fishing." (App.122.) Officer Charles then departed the scene to continue searching for the illegal immigrants while Lieutenant Rios remained with the truck. Rios made no further inquiries as to the occupants' immigration status, and instead asked them what they had caught while fishing. The defendants pointed to a mesh bag in the truck bed, in which Lieutenant Rios observed undersized baby lobsters; Rios took the bag and emptied its contents on the ground. Rios asked if they had caught anything else, and the defendants showed him an adult-sized lobster. Lieutenant Rios then observed that one of the individuals in the truck bed appeared to be nervous and was attempting to conceal something covered with shirts with his legs. Rios asked what the man was attempting to conceal, no one

answered, and Rios removed the shirts, revealing a dead sea turtle.

Defendants were arrested and charged with violating the Endangered Species Act and a Virgin Islands statute criminalizing the possession of undersized lobsters. They moved to suppress the fruits of the search, and, following a two-day evidentiary hearing, the District Court granted their motion. The District Court first concluded that Officer Charles had reasonable suspicion to stop the truck to determine whether its occupants were illegal immigrants, although it deemed that conclusion a "very close call." (App.13.) It found, however, that the suspicion justifying the initial stop was dispelled by Officer Charles's conversation with the truck's driver—as evidenced by Charles's statement to Rios that "it was ok" and that the occupants were local fisherman—and that Rios had no basis to detain and question the occupants any longer after Charles's statements. The Government filed this timely appeal.

## II.

The District Court had jurisdiction over this case pursuant to 18 U.S.C. § 3231 and we have jurisdiction to hear this appeal under 28 U.S.C. § 1291. We review the District Court's factual findings for clear error and exercise plenary review over its legal determinations. See United States v. Roberson, 90 F.3d 75, 77 (3d Cir.1996).

As we now explain, we conclude that the officers lacked reasonable suspicion to stop the pickup truck, and we will therefore affirm the District Court's suppression order.[1] "Generally, for a seizure to

---

1. We thus affirm the decision on different grounds than the District Court relied upon, see Morse v. Lower Merion School Dist., 132 F.3d 902, 904 n. 1 (3d Cir.1997) ("[w]e may affirm the lower court's ruling on different grounds, provided the issue which forms the basis of our decision was before the lower court") (citations omitted), and we do not address the issue of whether Lieutenant Rios's question about the suspects' fishing was an independent Fourth Amendment event requiring reasonable suspicion.

be reasonable under the Fourth Amendment, it must be effectuated with a warrant based on probable cause." *United States v. Torres*, 534 F.3d 207, 210 (3d Cir.2008) (citation omitted). "However, under the exception to the warrant requirement established in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the Supreme Court has held that police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity may be afoot, even if the officer lacks probable cause." *United States v. Mathurin*, 561 F.3d 170, 173–74 (3d Cir.2009) (quotations and citations omitted). The *Terry* exception to the warrant requirement likewise permits a police officer to conduct an investigative stop of an automobile if the officer "has reasonable suspicion that its passengers are engaged in criminal activity." *Id.* at 174 (citations omitted). As we recently explained:

> Under the reasonable suspicion standard, ... officers are required to have a particularized and objective basis to suspect illegal activity in order to conduct a search. The officers must be able to articulate reasons that led to the search ... that are indicative of behavior in which most innocent people do not engage. We consider the totality of the circumstances in determining whether reasonable suspicion existed at the time of the search. Accordingly, although each individual factor alone may be consistent with innocent behavior, it is sufficient if together they serve to eliminate a substantial portion of innocent travelers.

*United States v. Whitted*, 541 F.3d 480, 489 (3d Cir.2008) (internal quotations and citations omitted).

We agree with the defendants that Officer Charles did not have reasonable suspicion to stop the pickup truck. As an initial matter, the anonymous telephone call bore almost none of the indicia of reliability to which courts look when considering whether an anonymous tip provides a basis for a justifiable *Terry* stop. We have explained that the following factors demonstrate the reliability of an anonymous tip:

> (1) The tip information was relayed from the informant to the officer in a face-to-face interaction such that the officer had an opportunity to appraise the witness's credibility through observation.
>
> (2) The person providing the tip can be held responsible if her allegations turn out to be fabricated.
>
> (3) The content of the tip is not information that would be available to any observer....
>
> (4) The person providing the information has recently witnessed the alleged criminal activity.
>
> (5) The tip predicts what will follow, as this provides police the means to test the informant's knowledge or credibility[.]

*Torres*, 534 F.3d at 211 (citation omitted). Just one of these five factors—the fact that the activity in question had been "recently witnessed," *id.*—is suggestive of the tip's reliability. The fact that the tip was not communicated in a face-to-face interaction, the inability to hold the tipster responsible for fabricated information, the fact that the tip information would be available to any observer, and the nonpredictive quality of the tip all weigh firmly against its reliability. *Id.*

More fundamentally, the anonymous call, which contained no description of the suspects and did not mention an automobile, certainly did not provide a basis of reasonable suspicion to stop *this particular pickup truck*. Nor do we find that the remainder of the circumstances surrounding the *Terry* stop, together with the minimally reliable tip, were sufficient to show

the "particularized and objective basis to suspect illegal activity" that was required in order to justify the stop. *Whitted,* 541 F.3d at 489 (quotations and citations omitted). In arguing that probable cause existed, the Government focuses most strenuously upon three related facts: (1) Robin Bay is an area where immigrants are known to enter St. Croix by water, (2) Officer Charles, a police veteran, was aware of the water-based nature of Robin Bay entries, and (3) the passengers in the pickup truck were shirtless and had towels draped across their shoulders, suggesting the possibility of recent contact with water. We cannot agree with the Government that merely being shirtless and wearing a towel while driving along the shore of a Caribbean island is even remotely "indicative of behavior in which most innocent people do not engage." *Id.* (citing *Karnes v. Skrutski,* 62 F.3d 485, 493 (3d Cir. 1995)). To the contrary, the behavior is much more consistent with innocent activities, such as swimming, sunbathing, and fishing, than it is with criminal conduct. The facts upon which Charles relied in attempting to justify the stop simply do not "serve to eliminate a substantial portion of innocent travelers" such that a *reasonable* suspicion of criminal activity can be said to have existed. *Id.*; *see also Karnes,* 62 F.3d at 493.

The Government attempts to bolster the basis for Charles's suspicion by arguing that "prior to stopping the red pick-up truck, Officer Charles recalled that a red pick-up truck was previously stopped for suspicion of transporting illegal aliens." (Reply Br. 5.) The record makes plain, however, that the while a red pickup had indeed previously been stopped, the officers "made a check of the vehicle for any suspected illegal aliens[,] . . . cleared the vehicle, and the vehicle traveled on." (App.113.) That is, the prior stop of a red pickup truck, which the Government suggests justified Charles's suspicion in this

case, showed that the pickup was engaged in innocent, not criminal, activity. We certainly cannot conclude that the prior incident involving a red pickup truck provided a reasonable basis to suspect that defendants were engaged in illegal conduct.

In sum, considering the totality of the circumstances, we conclude that Officer Charles lacked reasonable suspicion to justify the traffic stop in this case. We therefore conclude that the evidence seized following the stop was properly suppressed.

## III.

For the foregoing reasons, we will affirm the judgment of the District Court.