**James WIERS, Tammy Wiers and Elliott Wheatley, Plaintiffs,**

v.

**Roby BARNES and Dean Johnson, Defendants.**

**Civil Action No. 95–125 MMS.**

United States District Court, D. Delaware.

May 3, 1996.

Edward C. Gill, Law Office of Edward C. Gill, P.A., Georgetown, Delaware, for plaintiffs.

William W. Erhart, of William W. Erhart, P.A., Wilmington, Delaware, for defendant Barnes.

Kevin P. Maloney, Deputy Attorney General, Department of Justice, Wilmington, Delaware, for defendant Johnson.

## OPINION

MURRAY M. SCHWARTZ, Senior District Judge.

### I. Introduction

The two motions for summary judgment before the Court have been filed individually by defendant Roby Barnes ("Barnes") and defendant Dean Johnson ("Johnson") (collectively, "defendants"), seeking summary judgment on claims brought by plaintiffs James Wiers ("Weirs"), Tammy Wiers, and Elliott Wheatley ("Wheatley") (collectively, "plaintiffs"). Plaintiffs have brought this action alleging violations of their civil rights, as well as claims for relief under state tort law. Jurisdiction is proper pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 1983. This Court has supplemental jurisdiction to entertain plaintiffs' state law claims pursuant to 28 U.S.C. § 1367. For the reasons set forth below, defendants' motions for summary judgment will be granted in part and denied in part.

### II. Factual Background

The following recitation of facts is derived from the pleadings and appendices; because plaintiffs and defendants dispute a substantial portion of the facts, separate accounts will be noted where relevant. On July 24, 1994, at approximately 12:30 a.m., Wiers was driving his white Corvette north along Route 1 in Sussex County, Delaware. Docket Item ("D.I.") 1, ¶ 6. Plaintiff Wheatley was riding in the vehicle as his passenger. Id. ¶ 7. At that same time, Delaware Park Ranger Barnes, employed by the Delaware Department of Natural Resources, Environmental Control, was on duty in a pickup truck. Id. ¶ 4; D.I. 69 at 3. Barnes was alerted by SUSSCOM, the Sussex County Dispatch Office, that a certain white Corvette was travelling north on Route 1 at a speed in excess of 100 miles per hour. Id. Wiers states he was driving approximately 60–65 miles per hour. D.I. 72 at B–33. Barnes radioed Johnson, a seasonal officer who was patrolling the east side of the south Inlet Park. Johnson, who is also employed by the Delaware Department of Natural Resources, Environmental Control, gave chase upon spotting the Corvette. D.I. 69 at 3. Upon approaching the Indian River Inlet Bridge, Wiers noticed emergency lights behind him, and then pulled over. There is disagreement as to how promptly Wiers pulled over; Johnson alleges that Wiers attempted to camouflage the Corvette in traffic and did not pull over until after "considerable delay." D.I. 66 at 3.

Barnes then arrived in her truck and parked it in front of the Corvette. D.I. 69 at 3.

Barnes exited the truck and approached the front of the Corvette, motioning for the occupants to get out of the car. *Id.* at 3–4. Wiers asserts that Barnes came at the car with her gun drawn and threatened them, an allegation which defendants dispute. D.I. 72 at B–35(a). Both Johnson and Barnes allege that they smelled alcohol on Wiers' breath, and that he exhibited signs of intoxication, including slurred speech and glassy eyes. D.I. 70 at A–16–A–17. Wiers himself admits that both he and Wheatley had at least three drinks that evening. D.I. 72 at B–32(b). At this point, defendants decided to wait for State Police backup and administer a portable breath test to Wiers. D.I. 66 at 4.

While waiting for backup, Weirs was handcuffed and placed in Barnes' pickup truck. D.I. 70 at A–15–16. Wheatley was also ordered out of the Corvette, handcuffed and placed into another patrol vehicle. *Id.* at A–16. Wiers allegedly began using profanity and came out of the truck towards the defendants, in a threatening fashion, warning them that they "did not know who [they were] dealing with." D.I. 67 at A–11. Wiers makes no allegation regarding his choice of language, but rather, states that he was merely coming towards them to inquire as to what he had done wrong and what was going on. D.I. 72 at B–39–B–42. Wiers allegedly came out of the patrol vehicle on two or three separate occasions, shouting profanity at Barnes. D.I. 70 at A–18; D.I. 67 at A–11–A–12. On the last occasion, Wiers was ordered back into the truck, an order he refused. D.I. 70 at A–19; D.I. 67 at A–11–A–12. At that point, Johnson and Barnes, with the help of another ranger who had arrived, subdued Wiers and held him on the ground until the State Police arrived. D.I. 70 at A–20. Defendants allege that Wiers was shouting insults at Barnes, expressing his dissatisfaction about being handled by a woman, such

as "Get this bitch off my hands. You better tell this bitch she better know who she's dealing with. Get this woman off me." D.I. 67 at A–13. Wiers' version is quite different. He alleges he was "bum rushed" and that the defendants "tackled him," throwing him to the ground, without provocation. D.I. 72 at B–44. Wiers further stated that someone put his or her knee on his back and held him on the ground. *Id.* at B–46. Wiers alleges that the rangers then began to search the Corvette. *Id.* at B–40.

When the State Police arrived, field sobriety tests were conducted on Wiers, each of which he failed. D.I. 70 at A–21. The State Police then administered a portable breath test on Wiers, which registered a level of .16. *Id.* at A–22. Wiers was then arrested for driving under the influence of alcohol and failure to obey the command of a police officer. D.I. 67 at A–19. Wheatley was not formally placed under arrest. D.I. 70 at A–23. Wheatley and Wiers, who were still handcuffed, were then transported to the park office at the Delaware Seashore State Park in separate vehicles. After arriving at the station, Wheatley was uncuffed and told he was free to make a phone call to get a ride home. *Id.* at A–23. Wheatley chose to remain at the station. *Id.* at A–24. Meanwhile, Wiers was directed into a conference room, and Barnes made clear to Wiers her intention to administer an intoxilizer test on Wiers. *Id.* at A–23–A–24. Wiers refused to blow into the intoxilizer, prompting Barnes to ask Wiers to sign an Implied Consent Form, which she allegedly read to him.[1] *Id.* at A–27–A–28. Barnes also freed Wiers' right hand from the handcuffs to enable him to sign the form. *Id.* at A–28.

At this point, the parties' versions of the facts dramatically divide. Barnes and Johnson allege that Wiers made a sudden movement towards Barnes. D.I. 67 at A–22. Johnson attempted to restrain Wiers, and the two men then began to "wrestle about the

---

1. Under Delaware law, any person who operates a motor vehicle shall be deemed to have given his consent to chemical tests or tests of his blood for the purpose of determining the presence of alcohol or drugs. *See* 21 *Del.C.* § 2740. If a person refuses to permit chemical testing, he shall be informed of the penalty of revocation of his license for a period of at least one year, and such refusal shall be transmitted to the Motor Vehicles Department of the Department of Public Safety. *Id.* §§ 2741 and 2742. The form furnished to Wiers was one such refusal form, referred to as an "Implied Consent Form."

room." D.I. 70 at A–35. Wiers allegedly picked up a chair and attempted to strike Johnson with it. *Id.* at A–34. Barnes signalled to Johnson that she was going to use her pepper, or "cap-stun" spray, on Wiers, and proceeded to spray him as he continued to fight with the rangers. *Id.* at A–37. The pepper spray having no apparent effect, Wiers continued to struggle with the rangers, until he collapsed, exhausted, on a chair. *Id.* at A–38. Revived, Wiers again attacked the rangers, this time, reaching for Barnes' gun, and pushing her against the wall. *Id.* at A–38–A–39. When the spray finally began to take effect, the rangers opened a door to give Wiers some fresh air. For a third time, Wiers commenced a struggle, and was finally subdued with the assistance of other law enforcement personnel. *Id.* at A–40.

Wiers, however, alleges that he was asked to read the Implied Consent Form. After defendants freed one of his hands, Wiers stood up for "no special reason," since everyone else was standing. D.I. 72 at B–49. When he stood up, he was pepper sprayed by Barnes. D.I. 72 at B–48–B–49. He was blinded and "thumped" around the room, "to a chair or a table or something else and all over." *Id.* at B–50. At no point in his testimony did Wiers mention that he commenced a struggle. Wiers alleges he was then sprayed for a second time while he was on the ground, in handcuffs. *Id.* at B–51. Throughout this incident, he screamed for help. *Id.* at B–52. He was held on the ground, and the defendants "took turns lunging at his back with their knees." D.I. 71 at 4; D.I. 72 at B–51–B–52. He was then jailed and stripsearched. D.I. 72 at B–54.

At some point subsequent to the events of July 24, 1994, state court proceedings were instituted against Wiers and Wheatley. Wiers was charged with driving under the influence and, while not clear from the record, either resisting arrest or failing to obey the command of a police officer. *See* D.I. 72 at B–25. Wheatley was later charged with hindering prosecution. *Id.* at B–24. These matters were tried in the Court of Common Pleas in Sussex County, Delaware. Both Wiers and Wheatley were found not guilty on all charges. *Id.* at B–25, B–30.

Plaintiffs filed suit in federal court on February 24, 1995, asserting various causes of action. Plaintiffs assert that defendants' wrongful actions constituted (1) a violation of their civil rights under 42 U.S.C. § 1983; (2) a violation of the First, Fourth and Fourteenth Amendments to the United States Constitution,[2] and Article 1, sections 6 and 7 of the State of Delaware Constitution;[3] (3) assault and battery on Wiers; (4) false arrest and unlawful imprisonment; (5) malicious prosecution; and (6) abuse of process. D.I. 1. Plaintiffs seek money damages for injuries suffered, including pain and suffering, emotional harm, permanent physical injuries, loss of reputation, lost wages and humiliation. *Id.* Tammy Wiers seeks damages for loss of consortium of her husband. All plaintiffs seek punitive damages for the alleged willful, reckless and wanton disregard for their rights and safety. *Id.*

Defendants Johnson and Barnes have each individually moved for summary judgment. Johnson argues that summary judgment should be granted in his favor because (1) Johnson has sustained his Rule 56 burden by demonstrating the absence of any set of facts which would support a finding for the requested relief; (2) the constitutional claims brought against Johnson, to the extent they are brought against him in his official capacity, are barred by the Eleventh Amendment; (3) he is not a "person" within the meaning of 42 U.S.C. § 1983; (4) he is immune from pendent state law claims by virtue of sovereign immunity because the state has not consented to such lawsuits; (5) he is entitled

---

**2.** The pleadings do not make clear the basis upon which plaintiffs make their First and Fourteenth Amendment claims. At oral argument on March 20, 1996, counsel for plaintiffs was asked for the factual basis for these claims. Counsel informed the Court that plaintiffs had abandoned their First Amendment claims. With respect to the Fourteenth Amendment, counsel included the claim to reach the conduct of state officials. The

Fourth Amendment, as incorporated into the Fourteenth Amendment, applies to the conduct of state officials. *Mapp v. Ohio,* 367 U.S. 643, 655, 81 S.Ct. 1684, 1691–92, 6 L.Ed.2d 1081 (1961).

**3.** Defendants have not moved for summary judgment on the Delaware Constitution claims.

to statutory immunity on plaintiffs' state law claims by virtue of the Delaware Tort Claims Act; (6) plaintiffs have failed to make out a prima facie case against him in his personal capacity on the pendent state law claims; (7) plaintiffs failed to make out a prima facie case for punitive damages on the pendent state law claims; (8) he is entitled to summary judgment based on qualified immunity; and (9) all the grounds asserted by defendant Barnes in her motion. D.I. 66.

Barnes has also moved for summary judgment, asserting the following grounds: (1) plaintiff failed to demonstrate facts which would allow a trier of facts to conclude that excessive force was used; (2) she is entitled to summary judgment based on qualified immunity; (3) plaintiffs failed to allege facts sufficient to establish the elements of the state torts; (4) Tammy Wiers does not have a legally recognized right which was violated by the alleged injuries to her husband; and (5) plaintiffs failed to set forth facts supporting a First Amendment claim. D.I. 69.

Plaintiffs responded to the motions in a single brief, arguing that (1) defendants failed to meet their summary judgment burden; (2) defendants are clearly liable for the use of excessive force in the traffic stop; (3) defendants are not shielded from liability under the doctrine of qualified immunity because the right to be free from excessive force had been clearly established; (4) defendants' conduct gives rise to cognizable claims under state tort law; (5) Tammy Wiers has a loss of consortium claim under state tort law, if not under federal law; (6) punitive damages are appropriate where defendants acted with reckless indifference to plaintiffs' civil rights; and (7) plaintiffs do not seek to impose liability against defendant Johnson in his official capacity. D.I. 71.

### III. Analysis

■ Summary judgment will be granted to a moving party "if the pleadings, depositions, answers to interrogatories, and admissions on file ... show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

A dispute over the facts which might affect the outcome of the case under the governing substantive law will preclude entry of summary judgment. Anderson v. Liberty Lobby, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); Orsatti v. New Jersey State Police, 71 F.3d 480, 482 (3d Cir.1995). In determining whether the dispute is genuine for purposes of Rule 56, the court's duty is to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 248, 106 S.Ct. at 2510. In making this determination, the facts must be viewed in the light most favorable to the non-moving party. See Bixler v. Central Pa. Teamsters Health & Welfare Fund, 12 F.3d 1292, 1297 (3d Cir.1993). When the allegations of the non-moving party contradict those asserted by the moving party, the assertions of the non-moving party must receive the benefit of the doubt, id. at 1297–98, and the non-moving party must receive the benefit of all reasonable inferences. Sempier v. Johnson & Higgins, 45 F.3d 724, 727 (3d Cir.), cert. denied, —— U.S. ——, 115 S.Ct. 2611, 132 L.Ed.2d 854 (1995).

### A. Immunity Against Section 1983 Claims

■ Before turning to the merits of the claims, the Court must determine whether defendants are shielded from liability from their actions on the ground of immunity. Two distinct types of immunity are available to an individual being sued in his or her individual capacity. Absolute immunity shields certain officials from all forms of liability based on the nature of their function. See, e.g., Stump v. Sparkman, 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978) (judges enjoy absolute immunity with respect to their judicial function); Eastland v. United States Servicemen's Fund, 421 U.S. 491, 95 S.Ct. 1813, 44 L.Ed.2d 324 (1975) (legislators enjoy absolute immunity with respect to the legislative function); Imbler v. Pachtman, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976) (prosecutors enjoy absolute immunity with respect to their prosecutorial function). These immunities were created at common law in order to "shield [public officers] from

undue interference with their duties and from potentially disabling threats of liability." *Harlow v. Fitzgerald,* 457 U.S. 800, 806, 102 S.Ct. 2727, 2732, 73 L.Ed.2d 396 (1982).

■ The other type of immunity is known as "good faith," or "qualified" immunity, which presumptively applies to the official acts of public officials. *Burns v. Reed,* 500 U.S. 478, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991). For executive officials in general, the Supreme Court has been clear that qualified immunity is the "norm." *Harlow,* 457 U.S. at 807, 102 S.Ct. at 2732. The acts of police officers, for example, are protected by qualified immunity. *Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). Police officers are accorded qualified immunity in order to promote the officers' interest in performing their duties without the fear of constantly defending themselves against insubstantial claims for damages. However, the immunity is not absolute, because of the public's interest in deterring government officials from unreasonably invading or violating individual rights under the laws of the United States. *Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 3038–39, 97 L.Ed.2d 523 (1987); *Orsatti,* 71 F.3d at 483.

■ Whether qualified immunity exists is a question of law to be determined by the Court. *Orsatti,* 71 F.3d at 483. When the material facts are not in dispute, the district court may decide whether the government official is shielded by qualified immunity. *Id.* However, notwithstanding the fact that the initial determination is one of law to be made by the court, a jury should decide the *disputed* factual issues relevant to that determination. "The first part of this test is purely a question of law, but the latter part of the test requires application of the law to the particular conduct at issue, an inquiry which may require factual determinations if the nature of conduct is disputed." *Karnes v. Skrutski,* 62 F.3d 485, 491–92 (3d Cir.1995); *Deary v. Three Un–Named Police Officers,* 746 F.2d 185, 190–92 (3d Cir.1984).

■ The test for qualified immunity has been set forth by the Supreme Court in *Harlow* as follows:

> [G]overnment officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

*Id.* 457 U.S. at 818, 102 S.Ct. at 2738. The Court's desire to prevent the substantial costs attendant with litigation against government officials and to foster disposition of such claims without the need to proceed to trial led the Court to fashion this objective test *without* the previously-recognized inquiry into the officials' subjective intent. *Id.* at 816–18, 102 S.Ct. at 2737–38. The Court provided the following guidelines to enable district courts considering motions for summary judgment to make the qualified immunity determinations as a matter of law:

> Reliance on the objective reasonableness of an officials' conduct, as measured by reference to clearly established law, should avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment. On summary judgment, the judge appropriately may determine, not only the currently applicable law, but whether that law was clearly established at the time an action occurred. If the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, or could he fairly be said to "know" that the law forbade conduct not previously identified as unlawful. Until this threshold immunity question is resolved, discovery should not be allowed. If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct.

*Id.* at 818–19, 102 S.Ct. at 2738; *see also Karnes,* 62 F.3d at 491–92 (first step in inquiry is to determine whether the law was clearly established at the time of the alleged violation; then, a determination whether, given the law at that time, a reasonable officer could have believed the conduct to be reasonable).

The gravamen of plaintiffs' section 1983 claims is that defendants used excessive force against them, culminating in a false arrest. Analytically, these claims are resolved by Fourth Amendment principles where, as here, the claims arise out of an investigatory stop. *Graham v. Connor,* 490 U.S. 386, 394, 109 S.Ct. 1865, 1870–71, 104 L.Ed.2d 443 (1989). Although an investigatory stop is not an arrest, *see Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), it may ripen into an arrest if the duration of the stop or the amount of force used in the situation is "unreasonable." *See United States v. Sharpe,* 470 U.S. 675, 682–88, 105 S.Ct. 1568, 1573–77, 84 L.Ed.2d 605 (1985). The Fourth Amendment, safeguarding the right of people to be "secure in their persons ... against unreasonable seizures," *see* U.S. CONST. amend. IV, has been interpreted to require application of the "reasonableness" standard to actions by law enforcement officers, with "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham,* 490 U.S. at 395–96, 109 S.Ct. at 1872. The test is therefore an objective one: "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397, 109 S.Ct. at 1872; *see also Karnes,* 62 F.3d 485 (applying objective reasonableness standard to conduct which allegedly violated plaintiff's Fourth Amendment rights); *Baker v. Monroe Township,* 50 F.3d 1186, 1192 (3d Cir.1995) (same).[4]

Because the Third Circuit Court of Appeals has recognized that the application of the objective reasonableness standard to conduct allegedly violating the Fourth Amendment is clearly established, defendants can only be granted qualified immunity if the Court determines that, given the law at that time, a reasonable officer could have believed the conduct complained of to have been reasonable. *See Karnes,* 62 F.3d at 491. Specifically, the Court must determine whether defendants' actions towards plaintiffs, beginning with Barnes' initial approach to the vehicle with her gun drawn, and ending with the alleged beating at the park office, even if a violation of the Fourth Amendment, was a violation a reasonable officer could have committed. *See Karnes,* 62 F.3d at 493–94. This inquiry must be made as to each plaintiff, as each one allegedly suffered different alleged violations.

### 1. Qualified Immunity from Wheatley's Claims

Beginning with the proposition that Fourth Amendment requirements for lawful

---

4. Part of plaintiffs' prima facie case to demonstrate excessive use of force is proof that the officers acted objectively unreasonably. Because the Third Circuit appellate court has determined that the law in this area was clearly established as of the time of the alleged use of excessive force, at first blush, it would appear that if plaintiffs succeed on their excessive use of force claim, qualified immunity would be unavailable to defendants as a matter of law.

This precise issue was raised by the plaintiff in *Karnes,* 62 F.3d at 492 n. 3. There, plaintiff argued that qualified immunity could not apply to his case, because where the law is clearly established and proof of the elements of the plaintiff's prima facie case would defeat immunity, no qualified immunity defense is available. *Id.* The *Karnes* panel rejected the argument:

This argument has superficial appeal but in fact misconstrues the nature of qualified immunity. In *Anderson v. Creighton,* the plaintiffs argued that "it is inappropriate to give officials alleged to have violated the Fourth Amendment—and thus necessarily to have unreasonably searched or seized—the protection of a qualified immunity intended only to protect reasonable official action. It is not possible, that is, to say that one 'reasonably' acted unreasonably." The Court rejected this argument. The Court's response was that qualified immunity seeks to measure whether the officer was reasonable in his understanding (albeit mistaken) of what was lawful under the Fourth Amendment. There is no conflict in saying a police officer who acted unreasonably (but mistakenly) believed his conduct was reasonable.

*Id.* (citations omitted); *see also Davis v. Scherer,* 468 U.S. 183, 190, 104 S.Ct. 3012, 3017, 82 L.Ed.2d 139 (1984) ("Even defendants who violate constitutional rights enjoy a qualified immunity that protects them from liability for damages unless it is further demonstrated that their conduct was unreasonable under the applicable standard.").

searches and seizures and its analysis under the objective reasonableness standard is clearly established, the Court must determine whether defendants' conduct towards Wheatley, even if a violation of the Fourth Amendment, is a violation a reasonable officer could have committed. If the answer to this inquiry is in the affirmative, defendants are entitled to the protection of qualified immunity. The only allegations made by Wheatley which constitute the alleged unlawful use of force are (1) the fact that Barnes pointed her handgun at the vehicle when approaching; (2) the act of handcuffing Wheatley; (3) the act of placing Wheatley in a separate patrol vehicle while handcuffed; and (4) the act of transporting Wheatley to the park office to arrange for a ride home. If a reasonable officer, mindful of Fourth Amendment constraints on law enforcement officers *vis-a-vis* a presumably innocent passenger in a speeding vehicle, could nonetheless have behaved in a manner similar to defendants, defendants are entitled to qualified immunity.

Many appellate courts, including the Third Circuit Court of Appeals, have examined the issue of whether the use of guns and handcuffs during an investigatory stop ripens the stop into a full-scale arrest or constitutes excessive use of force which, by definition, fails the Fourth Amendment's requirement of "reasonableness." In *Baker*, 50 F.3d at 1193, the Third Circuit Court of Appeals examined whether the order by law enforcement officers to plaintiffs to "get down," while guns were pointed at them, and subsequent handcuffing and detention of plaintiffs, constituted a violation of the plaintiffs' Fourth Amendment rights.

The *Baker* court first acknowledged that there is no *per se* rule that pointing guns at people or handcuffing them constitutes a violation of a person's Fourth Amendment rights. *Id.* However, the use of guns and handcuffs must be justified by the circumstances, with attention to the overall intrusiveness of the incident and the need for the measures with respect to danger to police and prevention of escape. *Id.* That the use of guns and handcuffs is permissible if justified reflects the court's belief that different

facts call for different responses. The court ultimately concluded that summary judgment should not have been granted in favor of defendant police officer because the facts as alleged might support a finding that plaintiffs' Fourth Amendment rights were violated. *Id.; compare United States v. Jones,* 973 F.2d 928 (D.C.Cir.1992) (ordering suspect to ground, handcuffing him, and transporting him to police car was reasonable police conduct and did not convert investigative detention into arrest), *cert. denied,* 510 U.S. 1065, 114 S.Ct. 741, 126 L.Ed.2d 704 (1994); *United States v. Del Vizo,* 918 F.2d 821 (9th Cir.1990) (holding suspect at gunpoint or handcuffing a suspect in and of themselves do not automatically transform an investigatory stop into an arrest); *United States v. Laing,* 889 F.2d 281 (D.C.Cir.1989) (use of gun and ordering suspect to lie down on ground considered reasonable investigatory stop), *cert. denied,* 494 U.S. 1069, 110 S.Ct. 1790, 108 L.Ed.2d 792 (1990); *United States v. Hastamorir,* 881 F.2d 1551, 1557 (11th Cir.1989) (use of guns and handcuffs in an investigatory stop was reasonable, given concern for officer's safety); *United States v. Kapperman,* 764 F.2d 786, 790 n. 4 (11th Cir.1985) (use of handcuffs does not automatically convert investigative detention into an arrest because police may take reasonable action to protect themselves).

Reviewing the record before it, the Court concludes that qualified immunity must be granted to defendants with respect to Wheatley. While it is true that the use of handcuffs alone, or in conjunction with placing Wheatley in the patrol vehicle and drawing a gun, might constitute excessive force if not justified by the circumstances, if there were a violation at all, it is conduct in which a reasonable officer could have engaged. Drawing a weapon while approaching a vehicle which had been speeding, and which continued to travel for a period of time, albeit disputed, after the ranger activated his emergency equipment, might well be an appropriate response made by a reasonable law enforcement officer giving chase in a similar situation. When the occupants of the vehicle, by their own admissions, had been drinking, a reasonable officer might also decide to remove the occupants and separate them, in

locations removed from the flow of traffic. Further, the use of handcuffs, even if a violation of Wheatley's Fourth Amendment rights, is a violation a reasonable officer might nonetheless make. As the Third Circuit Court of Appeals noted in *Baker*, use of guns and handcuffs is permissible, so long as it is justified by the circumstances, considering the overall intrusiveness of the incident and the need for the measures with respect to danger to police and prevention of escape. *Id.* at 1193. Finally, transporting Wheatley to the park office while handcuffed to arrange for a ride home, after his driver had been arrested, is also a response to this situation which could have been made by a reasonable officer. In sum, the Court finds that the acts of defendants at the scene and at the park office, even if they violate Wheatley's Fourth Amendment rights, are acts a reasonable officer could have committed. As such, the Court finds that defendants are entitled to qualified immunity as to Wheatley's federal claim. Summary judgment will therefore be granted in favor of defendants on Wheatley's section 1983 claim on the ground of qualified immunity.

 Because Wheatley's federal claim does not survive summary judgment, the Court will dismiss the supplemental state law claims set forth at Counts III, IV, V, and VI. *See* 28 U.S.C. § 1367(c)(3) ("The district court may decline to exercise supplemental jurisdiction over a claim under subsection (a) if (3) the district court has dismissed all claims over which it has original jurisdiction...."). The Third Circuit Court of Appeals has held that when determining whether to exercise supplemental jurisdiction, "the district court should take into account generally accepted principles of judicial economy, convenience, and fairness to the litigants." *Growth Horizons, Inc. v. Delaware County, Pa.*, 983 F.2d 1277, 1284 (3d Cir.1993) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966)). If the federal claims are disposed of prior to trial, the non-federal claims should likewise be dismissed. *Borough of W. Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir.1995). In this case, no judicial economy or convenience concerns favor exercising supplemental jurisdiction over Wheat-

ley's state law claims. Additionally, there is no unfairness to the litigants by the dismissal of Wheatley's state law claims. Accordingly, Wheatley's state law claims will be dismissed.

### 2. *Qualified Immunity from Wiers' Claims*

 Determination of qualified immunity with respect to Wiers requires the Court to determine whether a reasonable officer, upon stopping a speeding car, could have approached the car with her gun drawn, remove the driver, handcuff him, and place him in the patrol vehicle. This analysis would not differ in any significant respect from the analysis of defendants' actions towards Wheatley, and would yield the same result were it not for the subsequent actions directed towards Wiers. The Court must also determine whether a reasonable officer could have attacked Wiers, as he alleges, when he alighted from the patrol vehicle on separate occasions, and throw him to the ground while in handcuffs. The Court must then analyze whether a reasonable officer could have treated Wiers in the manner he alleges to have been treated at the park office, i.e., an unprovoked attack by the officers, spraying him twice with pepper spray, and then throwing him around the room. Clearly, these actions, considered to be true for qualified immunity purposes, require a result different from that of Wheatley.

Upon review of the record, the Court concludes that summary judgment on the ground of qualified immunity must be denied as to Wiers. The very facts going to the reasonableness of the defendants' behavior with respect to their conduct are not only in dispute, but leave far too many gaps to adequately assess their objective reasonableness. Given the disparity in the parties' respective versions of the incident, the Court not only cannot determine the actual sequence of events, but also cannot determine whether a reasonable officer could have behaved in the manner to which plaintiffs testified. Mindful of the Third Circuit appellate court's admonition to allow the jury to decide disputed factual issues relevant to the qualified immunity determination, *see Karnes*, 62 F.3d at 491; *Deary*, 746 F.2d at 190–92, the Court

concludes that summary judgment on the ground of qualified immunity must be denied as to Wiers.

### B. Claims Brought Pursuant to 42 U.S.C. § 1983

Count I of the complaint alleges a violation of plaintiffs' civil rights and is brought pursuant to 42 U.S.C. § 1983. D.I. 1, ¶ 19. Specifically, plaintiffs allege that defendants used excessive force, and the subsequent acts of arrest and prosecution constituted false arrest and malicious prosecution, all in violation of their Fourth Amendment rights.[5] Defendants argue that summary judgment should be granted in their favor on the excessive use of force claim because plaintiffs have failed to allege facts sufficient to allow a trier of fact to reasonably conclude that excessive force was used in this case. *See* D.I. 69 at 9. However, because the Court has found that defendants are entitled to qualified immunity protection as to Wheatley, the Court will limit its discussion of section 1983 to plaintiff Wiers.

The analysis begins with the language of the statute, 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom or usage of any State or Territory, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

*Id.* Wiers brings his claim against defendants who, at all times relevant to this action, were employed by the State of Delaware as Park Rangers for the Delaware Department of Natural Resources, Environmental Control. Wiers alleges that defendants were acting under color of state law.

As an initial matter, the capacity in which defendants are being sued must be determined. If Wiers is suing defendants in their official capacities, his claim is barred. Neither the state nor a state official acting in his or her official capacity is a "person" within the meaning of 42 U.S.C. § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64, 109 S.Ct. 2304, 2308–09, 105 L.Ed.2d 45 (1989). Accordingly, the only basis upon which Wiers may maintain his suit against defendants is in defendants' individual capacities. While the complaint does not specify the capacity in which defendants are being sued, Wiers' Opposition Brief states that the suit is being brought against defendants in their individual capacities. D.I. 71 at 18.[6]

As noted above, resolution of an excessive use of force claim requires a determination of the objective reasonableness of defendants' actions. *Graham*, 490 U.S. at 395–96, 109 S.Ct. at 1871–72. The issue of whether the force used was objectively reasonable turns on how the events unfolded along Route 1 in Sussex County. Wiers alleges that after being pulled over, Barnes came at the car with her gun drawn an a threatening fashion. D.I. 72 at B–35(a). He was told to get out of the car with his hands up, and to place them on the top of the car. *Id.* at B–36. He alleges that he was then handcuffed from

---

**5.** While the complaint does not make clear the basis for the section 1983 claims, the Court was informed at oral argument that excessive use of force, false arrest and malicious prosecution were the claims being brought under 42 U.S.C. § 1983. Wiers has not expressly contended that the act of stopping and detaining him was objectively unreasonable. This fact was not clear to the Court nor to defendants, as evidenced by the substantial discussion devoted to the reasonableness of the initial stop in defendants' briefs. At any rate, to the extent that Wiers challenges the reasonableness of the initial detention, because Wiers himself testified that he was travelling at a speed in excess of the legal limit, *see* D.I. 72 at B–33 (Deposition of James Wiers), as a matter of law, there was probable cause for defendants to stop the vehicle. *Karnes*, 62 F.3d at 491 ("The initial stop passes constitutional muster because [defendant] was speeding.").

**6.** Wiers did not actually specify the capacity in which defendant Barnes is being sued in his brief, but only stated that Johnson was being sued in his individual capacity. The Court asked counsel for plaintiffs whether the claims were also brought against Barnes in her individual capacity at oral argument, and was informed that all claims were against both defendants only in their individual capacities.

behind, while Barnes kept her gun pointed at him. *Id.* at B–37. Wiers then alleges he was placed in the truck, and waited there until he got out to inquire what was going on, *id.* at B–38–B–42, and then he was told to get on the ground, *id.* at B–43. Wiers alleges he was then "bum rushed" and "tackled, ran towards and tackled to the ground" by both Johnson and Barnes while still restrained by handcuffs, and then held there with someone's knee. *Id.* at B–44–46. If the force allegedly used by defendants at the roadside subsequent to the seizure is unreasonable under Fourth Amendment principles, Wiers' section 1983 claim will survive summary judgment, irrespective of what occurred at the park office. Wiers further alleges he was sprayed with pepper spray, leaving him temporarily blinded, and then was tossed around the room, off chairs and walls, while partially handcuffed, and then pepper sprayed again while on the office floor. *Id.* at B–49–B–51. Here again, if defendants engaged in this conduct as alleged, Wiers' section 1983 claim would survive.

Entry of summary judgment is improper unless there is no material fact in dispute which might affect the outcome of the suit. *See Orsatti,* 71 F.3d at 482. In the present case, defendants dispute nearly all of the allegations made by Wiers concerning the investigatory stop and the events which transpired at the park office. The Third Circuit Court of Appeals has held that the Court's only function on motion for summary judgment is to determine whether the evidence of record is such that a reasonable jury could return a verdict for the non-moving party. *Id.; see also Karnes,* 62 F.3d at 494 ("We are seeking to determine whether a sufficient dispute about a material fact exists 'to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'") (quoting *Anderson,* 477 U.S. at 251–52, 106 S.Ct. at 2511–12). The Court concludes that there is evidence of record upon which a reasonable jury could return a verdict for Wiers. Resolution of these factual issues must be made by a jury in determining whether defendants' actions were objectively unreasonable or constituted an excessive use of force. Accordingly, defendants' motion for summary judgment on

Wiers' excessive use of force claim will be denied. As the federal claims have been addressed, the Court turns its attention to Wiers' state law claims over which this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

### C. Sovereign Immunity

█ Defendants have also moved for summary judgment on the state tort law claims, Counts III, IV, V and VI. Specifically, defendant Johnson argues that he is immune from the state law claims by virtue of sovereign immunity because the State of Delaware has not consented to such a suit. Citing the Delaware case of *Doe v. Cates,* 499 A.2d 1175, 1176 (Del.1985), Johnson asserts that suits against public officers brought in their official capacities are barred by sovereign immunity unless the state waives sovereign immunity, which it has not. As discussed above, Wiers has stated that he has brought his claims against defendants in their individual capacities. Thus, sovereign immunity is no longer applicable as a defense.

### D. Statutory Immunity: Delaware Tort Claims Act

█ Johnson further argues that he is entitled to statutory immunity on Wiers' state law claims, Counts III, IV, V and VI, by virtue of the Delaware Tort Claims Act, 10 *Del.C.* § 4001 *et seq.* The Delaware Tort Claims Act provides immunity for the State of Delaware and its officials and employees upon the fulfillment of three requirements. The statute provides, in pertinent part:

§ 4001. Limitation on civil liability.

Except as otherwise provided by the Constitution or laws of the United States or of any State ... no claim or cause of action shall arise, and no judgment, damages, penalties, costs or other money entitlement shall be awarded or assessed against the State or any public officer or employee ... whether elected or appointed, and whether now or previously serving as such, in any civil suit or proceeding at law or in equity ... where the following elements are present:

(1) The act or omission complained of arose out of and in connection with the performance of an official duty requiring a determination of policy, the interpretation or enforcement of statutes, rules or regulations ... or any other official duty involving the exercise of discretion on the part of the public officer [or] employee ...;

(2) The act or omission complained of was done in good faith and in the belief that the public interest would be best served thereby; and

(3) The act or omission complained of was done without gross or wanton negligence; ... provided[ ] that in any civil action or proceeding against the State or a public officer [or] employee ... of the State, the plaintiff shall have the burden of proving the absence of 1 or more of the elements of immunity as set forth in this section.

*Id.; see Smith v. New Castle County Vocational–Technical Sch. Dist.*, 574 F.Supp. 813 (D.Del.1983). Defendants assert they are entitled to summary judgment on Wiers' state law claims under this statute.

The three elements required to demonstrate statutory immunity do not readily lend themselves to resolution by summary judgment. While the first factor, the discretionary function element, may be undisputed in this case, factor two requires an inquiry into the subjective intent of the public officers. Here, this means that Wiers has the burden to demonstrate the absence of good faith and absence of a belief that the public interest would be best served by the officers' conduct, *see* 10 *Del.C.* § 4001(2). Plaintiffs have provided sworn testimony which might allow an inference of bad faith on the part of the defendants, *see* D.I. 72 at B–44–B–46, B–49–B–52 (Wiers' testimony detailing the alleged excessive force against him); *see also id.* at B–60–B–61 (Wheatley's testimony detailing the alleged excessive force against Wiers which he observed). Defendants, not surprisingly, argue that their actions were moti-vated by concerns for their own safety, as well as the safety of Wiers. Therefore, at the summary judgment stage, the Court cannot conclude that there are no genuine issues of material fact and that Wiers would not be entitled to relief. Defendants' motion for summary judgment as to Wiers' state law claims, Counts III, IV, V, and VI, on the ground of statutory immunity will be denied.

### E. State Law Claims: Failure to Make Prima Facie Case

Defendants have also moved for summary judgment on certain state law claims, Counts V and VI, on the ground that Wiers has failed to make out a prima facie case for each of the torts. Defendants argue that Wiers has failed to meet his prima facie burden of demonstrating the presence of the essential elements of a claim for malicious prosecution (Count V) and for abuse of process (Count VI), and therefore they are entitled to summary judgment on those claims.[7]

In responding to a motion for summary judgment, the non-moving party must "go beyond the pleadings" and by depositions or other sworn testimony, designate "specific facts showing that there is a genuine issue for trial." *General Ceramics Inc. v. Firemen's Fund Ins. Cos.*, 66 F.3d 647, 651 (3d Cir.1995) (quoting *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553). In this context, Wiers must point to specific facts in the record which demonstrate that there is "sufficient evidence to allow a reasonable jury to find for [him] at trial." *See Brewer v. Quaker State Oil Refining Corp.*, 72 F.3d 326, 330 (3d Cir.1995). Wiers' proffer on each disputed state law claim will be addressed separately.

#### 1. Malicious Prosecution

Count V of the complaint alleges that the actions of defendants constituted malicious prosecution against Wiers. Criminal charges were brought against Wiers for

---

**7.** Johnson incorporated Barnes' arguments in his brief as grounds for granting summary judgment on all four state law claims, Counts III, IV, V, and VI. *See* D.I. 66 at 15. However, Barnes has only moved for summary judgment on malicious prosecution and abuse of process, Counts V and VI. Because there has been no charge that Wi-ers has failed to satisfy his prima facie burdens on the assault and battery and false arrest and unlawful imprisonment claims, Counts III and IV, the Court will only consider the motion on the malicious prosecution and abuse of process claims.

driving under the influence and resisting arrest, and Wiers was found not guilty in the Court of Common Pleas. *See* D.I. 72 at B–24–B–25. The institution of the state court proceedings against Wiers is alleged to constitute malicious prosecution.

■ A claim for malicious prosecution requires proof of each of the following elements:

(1) prior institution or continuation of some regular judicial proceedings against plaintiff in this action;

(2) such former proceedings must have been by, or at the instance of the defendant in this action;

(3) the former proceedings must have terminated in favor of the plaintiff herein;

(4) there must have been malice in instituting the former proceedings;

(5) there must have been a lack of probable cause for the institution of the former proceedings;

(6) there must have been injury or damage to plaintiff from the former proceedings.

*Megenhardt v. Nolan*, 583 A.2d 660, 1990 WL 169009 at *1 (Del.1990) (citing *Stidham v. Diamond State Brewery*, 41 Del. 330, 21 A.2d 283, 285 (Del.Super.Ct.1941)). In the present case, defendants argue that Wiers has not proffered evidence of malice, and therefore failed to meet his prima facie burden. The Court agrees.

Upon review of the record, the Court concludes that not only has Wiers failed to meet his prima facie burden to allege malice, he has also failed to allege a lack of probable cause to initiate the former proceedings. Plaintiffs have provided no testimony from which a reasonable inference of malice on the part of defendants in instituting the former criminal·proceedings can be drawn. Indeed, Wiers himself admits to drinking and driving, factual predicates for the driving under the influence charge. He further admits to driving at an excessive rate of speed, which provided the probable cause to initially stop the vehicle. Wiers makes the self-serving statement that defendants instituted these proceedings to conceal their own wrongful actions, but provides no evidence which corroborates his theory nor allows any reason-

able inferences to be drawn which support it, even if his allegation of ill will were true. *Cf. Kaye v. Pantone, Inc.*, 395 A.2d 369, 372 (Del.Ch.1978) ("There is authority that if [defendant's] purpose was otherwise a proper one that the addition of the incidental fact that he felt indignation or resentment toward the plaintiff, will not make him liable.") (citations omitted). The decision to prosecute violations of Delaware law is left to the discretion of the State: absent some affirmative evidence of malice or want of probable cause, this Court will not entertain a claim for malicious prosecution. Accordingly, defendants' motion for summary judgment on the claim of malicious prosecution of Wiers will be granted.

### 2. *Abuse of Process*

■ Count VI of the complaint alleges abuse of process. Defendants argue that Wiers has failed to allege "any improper purpose in the use of process, any form of coercion in the use of process or a collateral advantage to [defendants] arising from the coercion." D.I. 69 at 19. A prima facie claim for abuse of process requires allegations of the following elements: (1) an ulterior purpose; and (2) a wilful act in the use of the process not proper in the regular conduct of the proceedings. *Nix v. Sawyer*, 466 A.2d 407, 412 (Del.Super.Ct.1983).

■ This Court's review of the record indicates that Wiers has failed to allege facts sufficient to demonstrate an ulterior purpose in initiating the prosecution against him. Nowhere in the record does any testimony appear which would tend to demonstrate an ulterior motive in bringing the charges against Wiers. Here again, Wiers himself testified that he had had a few drinks on the evening in question, conceding a factual predicate for a driving under the influence of alcohol prosecution. *See* D.I. 71 at B–32(b). With respect to the resisting arrest charge, Wiers also admitted he got out of the patrol vehicle after he had been told to stay in the vehicle. *See id.* at B–39–B–41. An admission of express defiance of an order of a law enforcement officer is also a concession of a factual predicate for a resisting arrest charge. As to both of these charges, there-

fore, Wiers has failed to allege an ulterior motive, as required under Delaware law for an abuse of process claim. Accordingly, summary judgment on the abuse of process claim will be granted with respect to Wiers.

### F. Punitive Damages

Wiers has requested punitive damages arising out of the incident, alleging that "the actions of the Defendants were intentional, or in the alternative were done with willful, reckless and wanton disregard for the rights and safety of the [him], so as to warrant an award of punitive damages." D.I. 1, ¶ 17. While Wiers did not specify in his complaint whether the punitive damages claim attaches to the federal claim or to the state claims, the Court was informed at oral argument that he seeks punitive damages in connection with both the state law claims as well as the claims for relief pursuant to 42 U.S.C. § 1983. This specificity is important to the determination of the claim, since the standard which must be met for punitive damages arising out of federal claims is not identical to that of state claims.[8]

#### 1. Punitive Damages Arising From Section 1983 Claim

In *Smith v. Wade*, 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983), the Supreme Court held that punitive damages are available in cases brought pursuant to 42 U.S.C. § 1983 where defendant acts with "reckless or callous disregard for the plaintiff's rights," as well as in cases of "intentional violations of federal law." *Id.* at 56, 103 S.Ct. at 1640; *see also Keenan v. City of Phila.*, 983 F.2d 459, 469–70 (3d. Cir.1992) (citing *Smith* standard). Construing the facts and reasonable inferences therefrom in the light most favorable to Wiers, the Court holds that summary judgment should not be granted in favor of defendants for punitive damages from Wiers' section 1983 claim. As discussed above, reasonable inferences of reckless disregard for Wiers' rights may be drawn from the sworn testimony produced by plaintiffs. At Wiers' deposition, the fol-

lowing colloquy occurred with reference to the incident on the highway:

Q. And what was your response to your third inquiry?

A. I was getting bum rushed, tackled, ran towards and tackled to the ground.

Q. Who did that?

A. Both of them.

. . . . .

Q. And did they come into contact with you?

A. Yes.

Q. How?

A. Slammed me down on the ground and put, I would say, a knee or something right above my butt and pulled my arms up.

Q. Did they push you with their arms? Did they hold onto you then throw you down with their arms? Did they come barreling into you with their arms crossed?

A. I would say it was with their arms and hands.

Q. And they grabbed you?

A. And just pushed me right down to the ground, yes.

D.I. 72 at B–44–B–46, B–49–B–52. Wheatley, who witnessed the events at the park office, had the following responses at his deposition regarding defendants' conduct towards Wiers:

Q. What happened to him next?

A. Then they grabbed him and kind of threw him around a little bit. He hit the table that we were just sitting at, and, eventually, he ended up on the floor. And Officer Johnson and Officer Barnes just kept taking turns lunging at his back with their knees.

Q. You could see his back from where you were standing outside the trailer?

A. I could see everything. I had a clear view.

. . . . .

---

8. Wheatley also joined in the prayer for punitive damages for the federal and state law claims. As discussed *supra,* Wheatley's claims do not survive summary judgment. As such, punitive damages will only be discussed with respect to Wiers.

Q. And you say they took turns lunging at his back with their knees? Could you describe that a little more?

A. One would stand up, and I guess one leg would stay straight, and they'd bend the other knee. And the knee that was bent, they would hit him with it.

*Id.* at B–60–B–61.

Accepting plaintiffs' versions of the facts, this alleged physical beating took place without provocation. A reasonable inference of reckless or callous disregard for Wiers' rights may be drawn from this testimony. Accordingly, defendants' motion for summary judgment with respect to the punitive damages in connection with Wiers' section 1983 claim will be denied.

### 2. *Punitive Damages Arising From State Law Claims*

■ The standard which must be met for punitive damages under state law was set forth in *Jardel Co. v. Hughes,* 523 A.2d 518 (Del.1987), where the Delaware Supreme Court held that punitive damages are to be imposed "only after close examination of whether the defendant's conduct is 'outrageous,' because of 'evil motive' or 'reckless indifference to the rights of others.' " *Id.* at 529 (citing Restatement (Second) of Torts § 908 cmt. b (1979)). The court further stated that in rough approximation, these terms "parallel the wilful and wanton standard." *Id.; see also Sipple v. Kaye,* 1995 WL 654139, at *3 (Del.Super.Ct.1995) (citing *Jardel* standard). Applying this standard to the present case, upon construing the facts and reasonable inferences therefrom in the light most favorable to Wiers, the Court holds that summary judgment should not be granted in defendants' favor on the state law punitive damages claim. As noted above, Wiers and Wheatley provided sworn testimony regarding the force used against Wiers from which reasonable inferences of reckless indifference to Wiers' rights can be drawn. *See* D.I. 72 at B–44–B–46, B–49–B–52. Defendants' motion for summary judgment for punitive damages in connection with the state law claims will be denied.

### G. *Loss of Consortium*

■ Plaintiff Tammy Wiers has alleged loss of consortium of her husband Wiers. D.I. 1 ¶ 15.[9] Defendant Barnes has moved for summary judgment on this claim on the ground that Tammy Wiers does not have a legally cognizable federal damages claim predicated on the alleged violation of her husband's civil rights. D.I. 69 at 20. Plaintiffs have responded to that argument by asserting that even if Tammy Wiers does not have a cognizable claim under federal law, her claim may still be viable under state law. D.I. 71 at 16.

In *Quitmeyer v. Southeastern Pa. Trans. Auth.,* 740 F.Supp. 363 (E.D.Pa.1990), the Eastern District of Pennsylvania found no authority for spousal recovery for loss of consortium based on violations of the other spouse's civil rights. *Id.* at 370. The court there dismissed the claim, which was a separate count in an action brought pursuant to, *inter alia,* 42 U.S.C. § 1983. This Court's own research in this area also yields no precedent for this proposition. The Third Circuit Court of Appeals expressly declined to address the viability of a loss of consortium claim brought by the spouse of an injured section 1983 plaintiff in *Livingstone v. North Belle Vernon Borough,* 12 F.3d 1205, 1215 n. 10 (3d Cir.1993) ("[Defendants] contend that ... Mr. Livingstone's claim for loss of consortium is not recognized under section 1983. ... We do not consider [this] argument[ ]."); *see also Kulwicki v. Dawson,* 969 F.2d 1454, 1467 and n. 15 (3d Cir.1992) (noting that court will not address merits of section 1983 claims, of which loss of consortium was one such claim, on an interlocutory appeal); *House v. New Castle County,* 824 F.Supp. 477, 492 (D.Del.1993) (spouse's loss of consortium claim deriving from injured spouse's section 1983 claim abandoned and not considered by court since spouses were not married at the time).

■ This Court agrees with the Eastern District of Pennsylvania that there is no authority to consider a loss of consortium claim deriving from a claim of injury by an injured

9. It should be noted that this allegation does not appear as a claim for relief. Notwithstanding this omission, the Court will treat this allegation as a separate count in the complaint.

spouse brought pursuant to 42 U.S.C. § 1983. The purpose of section 1983 claims, as intended by Congress, was to provide a federal forum to remedy deprivations of civil rights. *Will,* 491 U.S. at 66, 109 S.Ct. at 2309–10. It was intended to create "a species of tort liability" in favor of persons deprived of *federally secured rights, see Smith,* 461 U.S. at 34, 103 S.Ct. at 1628–29 (emphasis added), not to provide a mechanism for vindication of state torts derived from another's section 1983 claim. Accordingly, the Court declines to allow Tammy Wiers' loss of consortium claim deriving from Wiers' action under section 1983.

■■■■ Tammy Wiers has also claimed loss of consortium deriving from her husband's injuries from other causes of action, including false arrest, malicious prosecution, assault and battery, and abuse of process. Under Delaware law, it is well settled that a spouse can maintain a cause of action for loss of consortium against a defendant resulting from physical injury sustained by the other spouse. *Jones v. Elliott,* 551 A.2d 62, 63 (Del.1988). The loss of consortium claim is derivative to that of the injured spouse and is dependent upon the existence of a valid claim by the injured spouse for physical injury against the tortfeasor. *Mergenthaler v. Asbestos Corp. of Am.,* 534 A.2d 272, 280–81 (Del.Super.Ct.1987). A cause of action for loss of consortium is predicated upon three elements:

> (1) that the party asserting the cause of action was married to the person who suffered a physical injury at the time the physical injury occurred;
>
> (2) that, as a result of the physical injury, the other spouse was deprived of some benefit which formerly existed in the marriage; and
>
> (3) that the injured spouse has a valid cause of action for recovery against the tortfeasor.

*Jones,* 551 A.2d at 63–64.

Because there is no dispute that Tammy Wiers was married to Wiers at all pertinent times, whether her claim for loss of consortium may continue therefore depends on the validity of her husband Wiers' state law claims against defendants. This Court has already determined that two of Wiers' state law claims against defendants will go forward, assault and battery (Count III), and false arrest and unlawful imprisonment (Count IV), because defendants failed to move for summary judgment on these claims.[10] The jury may well find that Wiers has made out valid causes of action against defendants on these counts, and would therefore be entitled to consider Tammy Wiers' derivative claim. Accordingly, Tammy Wiers' loss of consortium claim deriving from Counts III and IV cannot be disposed of at summary judgment stage. However, as to Counts V and VI, malicious prosecution and abuse of process, Wiers' claims do not survive summary judgment, *see supra,* and thus, Tammy Wiers' derivative loss of consortium claims must also fail. Barnes' motion for summary judgment on Tammy Wiers' loss of consortium claim deriving from the malicious prosecution and abuse of process claims will be granted; the motion for summary judgment on the loss of consortium claim deriving from the assault and battery and the false arrest and unlawful imprisonment claims will be denied.

## IV. Conclusion

Defendants' motion for summary judgment will be granted with respect to Wheatley's federal claim under 42 U.S.C. § 1983, on the ground of qualified immunity. The Court will decline to exercise supplemental jurisdiction over Wheatley's state law claims pursuant to 28 U.S.C. § 1367(c)(3), and those claims will be dismissed. Defendants' motion for summary judgment on Wiers' section 1983 claim for excessive use of force and on the ground of qualified immunity will be denied. Defendants' motion for summary judgment on Wiers' state law claims will also be denied on the ground of statutory immunity; however, summary judgment on Wiers' claims for malicious prosecution (Count V) and abuse of process (Count VI) will be granted. Defendants' motion for summary judgment on Wiers' punitive damages claims arising out of the section 1983 claim and the

**10.** *See supra* note 7.

remaining state law claims, assault and battery and false arrest and unlawful imprisonment, will be denied. Defendants' motion for summary judgment on Tammy Wiers' derivative loss of consortium claims deriving from section 1983 and from the malicious prosecution and abuse of process claims will be granted because those claims did not survive summary judgment, but denied with respect to Tammy Wiers' loss of consortium claims deriving from the assault and battery and false arrest and unlawful imprisonment claims.